**Leland Neal LaPIER, Petitioner–Appellant,**

**v.**

**Jack McCORMICK, Warden, Montana State Prison, Respondent–Appellee.**

No. 91–35832.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 15, 1992 *.

Decided Feb. 16, 1993.

---

\* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument.   Fed.R.App.P.  34(a); Ninth Cir.R.  34–4.

Leland Neal LaPier, pro se.

George M. Schunk, Asst. Atty. Gen., Helena, MT, for respondent-appellee.

Before WRIGHT, FLETCHER, and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

LaPier appeals the denial of his 28 U.S.C. § 2254 (1988) habeas corpus petition challenging his conviction in Montana state court for aggravated burglary, aggravated kidnapping, and felony assault. This case turns on whether LaPier is an Indian for purposes of criminal jurisdiction. If he is such an Indian, the Montana state court lacked criminal jurisdiction over him. The district court found that LaPier was not an Indian for these purposes. We affirm, but employ a different analytical test.[1]

Following a jury trial in Montana state court, LaPier was found guilty of aggravated burglary, aggravated kidnapping, and felony assault. *State v. LaPier*, 242 Mont. 335, 790 P.2d 983, 984 (1990).[2] The underlying offenses "occurred within the exterior boundaries of the Blackfeet Indian Reservation," and "[t]he victim was non-Indian." *Id.* 790 F.2d at 986. Indian country criminal jurisdiction is allocated among federal, state, and tribal courts depending on "the subject matter of the crime, the persons involved in the crime, and the locus of the crime," Scott W. Wilson, Comment, *Criminal Jurisdiction in Montana Indian Country*, 47 Mont.L.Rev. 513, 513 (1986); *see also* Kevin Meisner, Comment, *Modern Problems of Criminal Jurisdiction in Indian Country*, 17

Am.Indian L.Rev. 175, 175 (1992). Because the crime occurred on an Indian reservation, LaPier's legal status as an Indian (or non-Indian) determines jurisdiction. If LaPier is legally an Indian, the federal court would have jurisdiction, 18 U.S.C. § 1153 (1988), but if he is not, the Montana state courts would have exclusive jurisdiction, because the victim was a non-Indian. *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1882); *see also United States v. Wheeler*, 435 U.S. 313, 325 n. 21, 98 S.Ct. 1079, 1087 n. 21, 55 L.Ed.2d 303 (1978).

LaPier has steadfastly maintained that, as an Indian, he should have been tried in federal court. Generally speaking, it is true that in Indian country "federal jurisdiction is preeminent, specifically covering interracial crimes committed on an Indian reservation, 14 major crimes if committed by an Indian on a reservation, and certain assimilative crimes within Indian country." Robert N. Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze*, 18 Ariz.L.Rev. 503, 575–76 (1976). The boundaries of this federal jurisdiction, however, are not as clearly defined as one might hope or expect. Among other things, "the ambiguous definitions currently used for determining who is an Indian," *id.* at 576, complicate what should be rather routine analysis.

We need not address, however, the question whether LaPier has shown a significant degree of blood and sufficient connection to his tribe to be regarded as one of its members for criminal jurisdiction purposes. *See, e.g., United States v. Rogers*, 45 U.S. (4 How.) 567, 573, 11 L.Ed. 1105 (1846); *United States v. Broncheau*, 597 F.2d 1260, 1263 (9th Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). There is a simpler threshold question that must be answered first, and in this case it is dispositive: Is the Indian group with

---

1. The district court's decision to deny LaPier's habeas petition is reviewed de novo. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991). Findings of fact are reviewed for clear error. *Id.*

2. Montana has not been granted, nor has it assumed, criminal jurisdiction over the Blackfeet Indian Reservation, either under the Act of August 15, 1953, 67 Stat. 588 (Public Law 280), or under Title IV of the Civil Rights Act of 1968, 82 Stat. 78 (Indian Civil Rights Act).

which LaPier claims affiliation a federally acknowledged Indian tribe?

■ If the answer is no, the inquiry ends. A defendant whose only claim of membership or affiliation is with an Indian group that is not a federally acknowledged Indian tribe cannot be an Indian for criminal jurisdiction purposes. *Cf. United States v. Heath*, 509 F.2d 16, 19 (9th Cir. 1974) (member of "terminated" Indian tribe no longer an Indian for criminal jurisdiction purposes). This is because " 'in dealing with Indians the Federal Government is dealing primarily not with a particular race as such but with members of certain social-political groups towards which the Federal Government has assumed special responsibilities.' " *Id.* (quoting Felix Cohen, *Handbook of Federal Indian Law* 5 (1942)). Federal legislation treating Indians distinctively is rooted in "the unique legal status of Indian tribes under federal law and upon the plenary power of Congress, based on a history of treaties and the assumption of a 'guardian-ward' status, to legislate on behalf of federally recognized Indian tribes." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Thus, the special federal role in regulating the tribes as " 'a separate people' with their own political institutions" is the foundation for federal criminal jurisdiction over Indians in Indian country. *United States v. Antelope*, 430 U.S. 641, 646, 97 S.Ct. 1395, 1399, 51 L.Ed.2d 701 (1977).

■ It is therefore the existence of the special relationship between the federal government and the tribe in question that determines whether to subject the individual Indians affiliated with that tribe to ex-clusive federal jurisdiction for crimes committed in Indian country. *See id.* at 646–47 n. 7, 97 S.Ct. at 1398–99 n. 7; *Heath*, 509 F.2d at 19. To determine whether that special relationship exists—whether the United States recognizes a particular tribe—we defer "to the political departments." *See Baker v. Carr*, 369 U.S. 186, 215, 82 S.Ct. 691, 709, 7 L.Ed.2d 663 (1962).

■ The Bureau of Indian Affairs ("BIA") only relatively recently has compiled a comprehensive list delineating which Indian tribes are acknowledged by the federal government. William A. Quinn, Jr., *Federal Acknowledgement of American Indian Tribes: Authority, Judicial Interposition, and 25 C.F.R. § 83*, 17 Am.Indian L.Rev. 37, 38 (1992). The first version of the list was published in 1979, more than a century and a half after the BIA's establishment in 1822.[3] *Id.* The most recent version, published in 1988 at 53 Fed.Reg. 52,829 (1988), lists 317 federally acknowledged Indian tribes; four other tribes have been accorded federal acknowledgment since 1988. Sharon O'Brien, *Tribes and Indians: With Whom Does the United States Maintain a Relationship?*, 66 Notre Dame L.Rev. 1461, 1469 & n. 37 (1991); *see also* Rachael Paschal, Comment, *The Imprimatur of Recognition: American Indian Tribes and the Federal Acknowledgment Process*, 66 Wash.L.Rev. 209 (1991). Absent evidence of its incompleteness, the BIA list appears to be the best source to identify federally acknowledged Indian tribes whose members or affiliates satisfy the threshold criminal jurisdiction inquiry.[4]

---

3. Quinn explains the gap by pointing out that early in this nation's history, determining "whom [sic] or what group was Indian" was relatively straightforward using "simple and clear ethnic distinctions." Quinn, *Federal Acknowledgment,* at 38. The "difficult questions of tribal or Indian identity" unfolded over time. *Id.*

4. The list of acknowledged tribes is published pursuant to 25 C.F.R. § 83.6(b) (1992). Section 83.2 establishes that

The purpose of this part is to establish a departmental procedure and policy for acknowledging that certain American Indian tribes exist. Such acknowledgment of tribal existence by the Department is a prerequisite to the protection, services, and benefits from the Federal Government available to Indian tribes. Such acknowledgment shall also mean that the tribe is entitled to the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their status as Indian tribes as well as the responsibilities and obligations of such tribes. Acknowledgment shall subject the Indian tribe to the same authority of Congress and the United States to which other federally acknowledged tribes are subjected.

25 C.F.R. § 83.2.

■ In briefs submitted to this court, LaPier contends that he is an enrolled member of the Little Shell Band of Landless Chippewa Indians of Montana.[5] Even if he is, that fact makes no difference because his claim to Indian status fails the threshold test. The Little Shell Band of Landless Chippewa Indians of Montana is not a federally acknowledged tribe of Indians. 53 Fed.Reg. 52,829. Thus, while LaPier may be an Indian in an anthropological or ethnohistorical sense, he is not an Indian for purposes of criminal jurisdiction. *Cf. Heath*, 509 F.2d at 19 (member of terminated Klamath Indian Tribe still "anthropologically a Klamath Indian," but is subject to state criminal jurisdiction because "his unique status vis-a-vis the Federal Government no longer exists").

Accordingly, we affirm the district court's denial of LaPier's habeas petition. LaPier claims no membership or affiliation in any federally acknowledged Indian tribe, and therefore fails the threshold test for determining that he is an Indian who would be subject by reason of that status to the criminal jurisdiction of the federal courts for the crimes in question, committed in Indian country.

AFFIRMED.

---

**5.** LaPier apparently has abandoned on appeal any argument that he is affiliated with the Turtle Mountain Band of Chippewas or the Blackfeet Tribe of the Blackfeet Reservation of Montana, both federally acknowledged Indian tribes.