[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FACTS
This case arises out of an alleged breach of a management agreement. The plaintiff, First American Casino Corporation (corporation), is a corporation that develops and assists in the operation of gaming enterprises, including casinos. The defendant, Eastern Pequot Nation, aka Paucatuck Eastern Pequot Indian Tribe ("tribe"), is an Indian tribe recognized by the State of Connecticut pursuant to General Statutes § 47-59a.[1] The tribe is not recognized by the federal Bureau of Indian Affairs of the Department of the Interior (BIA)[2] but is seeking federal recognition and has been granted preliminary approval. Federal recognition would allow the tribe to open a gaming enterprise.
The complaint alleges as follows: on May 22, 1995, the parties entered into a management agreement (agreement) where the corporation was to assist the tribe in developing and operating a casino. The parties agreed to conduct their business relationship under the Indian Gaming Regulatory Act (IGRA)and intended to submit the agreement to the National Indian Regulatory Commission (commission) for approval pursuant to the IGRA. The corporation began to provide the agreed upon financial support to the CT Page 9183 tribe. Under Section 3.2 of the agreement, the corporation was granted exclusive rights by the tribe and the tribe agreed not to enter into any agreement with any other person or entity regarding gaming. The tribe, however, negotiated with other parties and contracted with another party for the same duties that its agreement with parties set forth.
On April 7, 1997, the plaintiff filed suit against the defendant for breach of the agreement. On May 2, 1997, the defendant removed the matter, without objection, to-the Federal District Court for the District of Connecticut. On July 14, 1999, the District Court issued an order to show cause, requiring the defendant to demonstrate that there was a federal question, thus giving the court jurisdiction. On May 10, 2000, the Honorable Robert N. Chatigny issued a ruling and found that there was no subject matter jurisdiction and remanded the matter back to the Superior Court. First American Casino, Corp. v. Eastern Pequot Nation,
United States District Court, Docket No. 97CV846 (D. Conn. May 10, 2000.)
On September 18, 2000, the plaintiff filed a five count amended complaint against the defendant alleging breach of the agreement and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The plaintiff seeks temporary and permanent injunctions, money damages and attorneys fees.
On November 8, 2000, the defendant filed an answer and the following six special defenses: (1) the defendant has sovereign immunity from suit; (2) the parties agreed that the defendant is immune from suit except in limited circumstances not present in the current case; (3) the plaintiff violated the management agreement by contesting the federal court jurisdiction; (4) the management agreement is void ab initio because it failed to comply with Title 25 of the United States Code, including but not limited to 25 U.S.C. § 81, and 25 § C.F.R. § 531 et seq.; (5) a condition precedent to the management agreement, namely written approval by the Chairman of the National Indian Gaming Commission, never occurred and the parties were never bound by the management agreement; and (6) the plaintiff's sole remedy under the management agreement is arbitration.
The plaintiff now moves to strike the first, second, fourth, and fifth special defense as well as defendant's answer to Count one, paragraph three that states "that it is a sovereign nation."
 DISCUSSION
A. STANDARD
CT Page 9184
"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Novicki v. City of New Haven,47 Conn. App. 734, 739, 709 A.2d 2 (1998). See also Amore v. Frankel228 Conn. 358, 364, 636 A.2d 786 (1994); Lussier v. Dept. ofTransportation, 228 Conn. 343, 349-50, 636 A.2d 808 (1994); Tamm v.Burns, 222 Conn. 280, 289, 610 A.2d 590 (1992); Sanzone v. Board ofPolice Commissioners, 219 Conn. 179, 185-86, 592 A.2d 912 (1991). "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody, N.E., Inc.239 Conn. 93, 99, 680 A.2d 1321 (1996). See also Gurliacci v. Mayer,218 Conn. 531, 545, 590 A.2d 914 (1991); Statewide Grievance Committeev. Rozbicki, 211 Conn. 232, 245, 558 A.2d 986 (1989); Cahill v. Board ofEducation, 198 Conn. 229, 238, 502 A.2d 410 (1985). The defendant has raised the issue of sovereign immunity as a special defense. The proper method, however, is to raise the issue of sovereign immunity in a motion to dismiss. Once the issue of subject matter jurisdiction is raised, the issue must be determined by the court. Therefore, the court will address the issue of sovereign immunity and subject matter jurisdiction, as if it were raised in a motion to dismiss.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer supra, 218 Conn. 544. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader."Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998).
B. Sovereign Immunity
The plaintiff argues that the defendant cannot assert sovereign immunity because (1) the defendant is not a federally recognized tribe as regulated by the BIA and (2) the Connecticut Supreme Court in State v.Sebastian 243 Conn. 115, 701 A.2d 13 (1997), already denied that the defendant has sovereign immunity because it was not federally recognized.
Federally recognized tribes are entitled to sovereign immunity unless there has been congressional waiver or the tribe has expressly consented to suit. Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343 (2nd Cir. 2000); Romanella v. Hayward 933 F. Sup. 163, aff'd 114 F.3d 15 (2nd
Cir. 1997). This court is now asked to determine whether a tribe that has CT Page 9185 not been granted federal recognition is entitled to sovereign immunity.
"The powers of Indian tribes are, in general, `inherent powers of alimited sovereignty which has never been extinguished. . . . The sovereignty that the Indian tribes retain is of a unique and limited character. . . . Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute or by implication as a necessary result of their dependent status." (Citations omitted; emphasis in original.) United States v. Wheeler 435 U.S. 313, 322-23 (1978).
"Like all instrumentalities of the state of Connecticut, our courts are powerless to intervene in the exercise of tribal self-government. Federal statute, federal common law and state statute all require us to treat bona fide Indian tribes as sovereign nations and to protect tribal rights to self-determination. . . . Similarly, state statutes explicitly provide that the indigenous tribes, [including the Paucatuck Eastern Pequot Tribe] are self-governing entities possessing powers and duties over tribal members and reservations. . . . General Statutes § 47-59a
(b). Any action by a state court that infringed on tribal sovereignty or interfered in tribal self-government would therefore be improper." (Citations omitted; internal quotation marks omitted.) State v.Sebastian supra, 243 Conn. 159.
The First Circuit has held that a non-federally recognized tribe is still entitled to sovereign immunity and found that there was "no case which conditions the invocation of sovereign immunity on . . . formal federal recognition of the particular tribe or statute." Bottomly v.Passamaquoddy Tribe, 599 F.2d 1061, 1065 (1st Cir. 1979.) The court found that it is incorrect to "condition the exercise of an aspect of sovereignty on a showing that it had been granted to the tribe by the federal government, either by explicit recognition or implicitly through a course of dealing." Id., citing United States v. Wheeler supra,435 U.S. at 322-23.
The plaintiff repeatedly argues that without federal recognition the tribe does not have sovereign immunity. In support of its argument, the plaintiff points to LaPier v. McCormick 986 F.2d 303, 305 (9th Cir. 1993), as stating that the threshold question for whether sovereign immunity applies to a tribe is whether the person is a member of a federally recognized tribe. This, however, is a misreading of the case. The court was stating solely that the defendant who argued that as an Indian he should have been tried in federal, not state court, and "whose only claim of membership or affiliation is with an Indian group that is not a federally acknowledged Indian tribe cannot be an Indian for [federal] criminal jurisdiction purposes."(Emphasis added.) Id. The plaintiff is attempting to argue that because the tribe does not have CT Page 9186 federal recognition it is not entitled to sovereign immunity, but the plaintiff does not provide any authority that supports its argument.
By contrast, the defendant cites Masayesva v. Zah 792 F. Sup. 11 78 (D.Ariz. 1992). In Masayesva v. Zah the court upheld the federal BIA's decision to recognize the Piaute tribe. In its analysis, the court adopted the reasoning of the 9th circuit and found that a non-federally recognized tribe can assert sovereign immunity if the tribe has "tribal status," which would require either an examination of whether federal recognition should be upheld or undertake a "careful scrutiny of various historical factors." Id., 1183, quoting State of Alaska v. Native Villageof Venetie, 856 F.2d 1384, 1387 (9th Cir. 1988).
The plaintiff also argues that State v. Sebastian supra, 243 Conn. 115, has already determined that the defendant does not have sovereign immunity. (Plaintiff's memorandum, p. 4.) The plaintiff correctly argues that the court in Sebastian found that the defendant, a member of an Indian tribe, was not an "Indian" under federal law because the tribe was not federally recognized. The court in Sebastian did not, however, hold that the lack of federal recognition prevented the defendant from asserting sovereign immunity. It merely held that the defendant was not protected by the federal Indian Civil Rights Act and was not an "Indian" for federal criminal jurisdiction purposes. The court did not find that the defendant's tribe was not entitled to sovereign immunity. The court held that "this case does not implicate tribal sovereignty. Even if we were to assume, arguendo, that the Pawcutuck Eastern Pequot tribe has retained its sovereignty over criminal matters that inherent sovereignty is not implicated because the . . . Tribe . . . is not a party to this case." Id., 161.
Federal recognition of a tribe is not required for the tribe to assert sovereign immunity. See Bottomly v. Passamaquoddy Tribe, supra,599 F.2d 1061; State of Alaska v. Native Village of Venetie, supra, 856 F.2d 1387; Mawayesva v. Zah supra, 792 F. Sup. 1183. "`Tribal immunity is just that: sovereign immunity which attaches to a tribe because of its status as a dependant domestic nation.'" State v.Subastian, supra, 243 160, quoting United States v. James 980 F.2d 1314,1319 (9th Cir. 1992). The state of Connecticut has recognized that the defendant is a dependant domestic nation, a "self-governing [entity] possessing powers and duties over tribal members and reservations. Such powers and duties include the power to: (1) Determine tribal membership and residency on reservation land; (2) determine the tribal form of government; (3) regulate trade and commerce on the reservation; (4) make contracts, and (5) determine tribal leadership in accordance with tribal practice and usage." General Statutes § 47-59a.[3] Therefore, the defendant is entitled to assert sovereign immunity. CT Page 9187
The analysis of whether there is subject matter jurisdiction is this case, however, does not end with a determination that the defendant is entitled to sovereign immunity. The plaintiff argues that the defendant waived its sovereign immunity pursuant to Section 21.1 of the agreement. The defendant argues that the present case is excluded from the limited circumstances set forth in Section 21 of the agreement and the defendant has not waived its sovereign immunity.
"[A]n Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe ofOklahoma v. Manufacturing Technologies, Inc. 523 U.S. 751 (1998). A waiver of sovereign immunity cannot be implied, it must be unequivocally expressed. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978), see also Oklahoma Tax Commission v. Citizen Band Potawatomi Tribe ofOklahoma, 498 U.S. 505, 509 (1991).
Section 21[4] of the management agreement waives the defendant's sovereign immunity in limited instances. Under Section 21.1,[5] the tribe waives its sovereign immunity to enforce an award of money damages resulting from arbitration of a deadlock between the board of directors. Under Section 21.3.,[6] the tribe waives its sovereign immunity to enforce a determination by arbitration for injunctive relief or specific performance. This is an express waiver of the tribe's sovereign immunity in those circumstances.
Recently, the U.S. Supreme Court determined that an Indian tribe waived its immunity from suit in state court when it expressly agreed to arbitrate all contractual disputes, to the governance of state law and to the enforcement of arbitration awards in any court having jurisdiction thereof. CL Enterprises v. Citizen Band Potawatomi Indian Tribe,
U.S. (No. 00-292, 69 U.S.L.W. 4290, April 30, 2001). The Potawatomi
case involved a construction contract between an Indian tribe and a non-Indian party that contained an arbitration clause providing that "all claims or disputes . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules or the American Arbitration Association. . . . The award . . . shall be final, and judgment entered upon it in accordance with applicable law in any court having jurisdiction thereof." Id. The contract also contained a choice-of-law clause that provided that the contract was to be governed by the law of the place where the project is located, which was Oklahoma. CL enterprises submitted the dispute to arbitration; the tribe asserted sovereign immunity and refused to participate in the arbitration proceeding. Nonetheless, the arbitrator rendered an award in favor of CL Enterprises. The court held that the tribe had "clearly consented to arbitration and waived its immunity because the tribe had agreed by CT Page 9188 express contract, to adhere to certain dispute resolution procedures. . . . The regime to which the Tribe subscribed includes entry of judgment upon an arbitration award in accordance with the Oklahoma Uniform Arbitration Act." Id., 7. The court determined that the tribe had waived its sovereign immunity and the arbitration award was enforceable in court.
In the present case, plaintiff's action has not been commenced to enforce an arbitration award or to determine the plaintiff's entitlement for injunctive relief or specific performance.[7] Unlike the facts inPotawatomi the agreement does not contain an express agreement to arbitrate all disputes arising from the contract, nor provisions governing the arbitration clause pursuant to industry arbitration rules or a choice of law clause.
In this case the agreement contains a limited arbitration clause. The factors that would lead to a determination that the tribe has waived its immunity in all circumstances are not found here. The tribe has not waived its immunity in the present circumstance. The tribe has sovereign immunity and the court find that it does not have subject matter jurisdiction over this case. Therefore, the case is dismissed.[8]
Robaina, J.