**In re: Duane GARVAIS, Petitioner.**

**No. CV–03–0291–JLQ.**

United States District Court,
E.D. Washington.

Dec. 2, 2004.

Leslie Richard Weatherhead, Witherspoon Kelley Davenport & Toole, Spokane, WA, for Petitioner.

Everett B. Coulter, Jr., Evans Craven & Lackie PS, Mark Edmund Vovos, Mark Vovos Law Office, Spokane, WA, for Defendants.

MEMORANDUM OPINION AND ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

QUACKENBUSH, Senior District Judge.

Before the court is the Amended Petition For Writ of Habeas Corpus by Duane Garvais, at the time a United States Bureau of Indian Affairs police officer, who challenges the jurisdiction of the Spokane Tribe of Indians Tribal Court to try him on charges filed in that court. The Petitioner was represented by Leslie R. Weatherhead and D. Toby McLaughlin of Witherspoon, Kelley, Davenport and Toole. The Spokane Tribe appeared through Mark E. Vovos, Margo Hill and Lorraine Parlange. Evidentiary hearings were held on August 9, 2004 and September 7, 2004. Supplemental briefs were then submitted by the parties.

■ *Inter alia,* Garvais contends that he is not legally an "Indian" as defined by federal law granting limited criminal jurisdiction to tribal courts and also that at the time herein involved, being a federal police officer, he was entitled to sovereign immunity in that the charges against him arose out of his duties as a federal police officer. This matter is disposed of on the first challenge that Garvais is not legally an "Indian" as that term has been defined under federal law. Therefore, the court has not addressed the sovereign immunity issue. Previously, this court has ruled that pursuant to 25 U.S.C. § 1303, which states that "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by Order of an Indian tribe," does not require Garvais to first exhaust his challenges in tribal court before seeking *habeas* relief in this court. (C.R. 44 and cases cited therein); *Wetsit v. Stafne,* 44 F.3d 823, 826 (9th Cir.1995); and *Means v. Northern Cheyenne Tribal Court,* 154 F.3d 941 (9th Cir. 1998) (rev'd on other grounds, *United States v. Enas,* 255 F.3d 662 (9th Cir. 2001)).

## BACKGROUND

Based on the evidentiary hearings and documents admitted during those hearings, the following are the findings of fact of this court. In August, 2003, and for several years prior thereto, Garvais was employed as a police officer by the United States Bureau of Indian Affairs. At the times in question he was assigned to the Spokane Tribe of Indians reservation. Garvais contends that while so employed he began investigating the theft of property from the evidence room, allegedly by Spokane Tribal police officers. Garvais contends that as a result of that investigation he was retaliated against and charged by those officers in Spokane Tribal Court with the misappropriation of drug "buy" money with which he was entrusted. Garvais denies that charge. Garvais was arrested on a Spokane Tribal Court warrant and at the time of the filing of this *habeas corpus* action was in custody pursuant to that warrant. Garvais was released on bond from the Spokane Tribal Jail and has remained at liberty pending resolution of the tribal court jurisdictional issue raised in this *habeas corpus* action.

■ The evidentiary hearings in this matter revealed that most of the factual matters are not in dispute. First, the evidence revealed that Garvais is not and never has been an enrolled member of any federally recognized tribe nor has he ever been eligible for such enrollment. Garvais contends that this fact alone precludes a finding that he is an "Indian" for tribal court jurisdictional purposes pursuant to 25 U.S.C. § 1301(2) which, in relevant

part, affirms "the inherent power of Indian tribes ... to exercise criminal jurisdiction over all Indians." While membership in a federally recognized tribe is an important consideration in the "Indian" determination, for the reasons stated, *infra*, this court determines that non-membership in a federally recognized Indian Tribe, in and of itself, does not preclude an "Indian" finding.

Duane Garvais was born on May 6, 1966 to Mary McDonald Garvais and Kenneth Garvais. His mother had 1/8th Colville Indian blood, but that limited blood quantum did not entitle her to become an enrolled member of the Colville Tribe. The birth certificate of Duane Garvais (Ex. 2) listed the "Color Or Race" of the mother, Mary McDonald Garvais, as "White" and that of the father, Kenneth Charles Garvais as "Indian," although the evidence in this case (Ex. 4) indicated that at most the father's total "Indian" blood was 1/4th, being 1/16 Yankton Sioux, 1/16th Santee Sioux, and 1/8th Kootenai. The evidence in this case further established that the biological father was never an enrolled member of any federally recognized Indian Tribe nor was he eligible for enrollment therein in that his largest quantity of blood was 1/8th Kootenai. The total "Indian" blood of the Petitioner, Duane Garvais was at most 1/16th Colville, 1/32 Yankton Sioux, 1/32 Santee Sioux, and 1/16th Kootenai, far short of the 1/4th blood required by these tribes for enrollment.

When the Petitioner, Duane Garvais, was approximately one year old his parents divorced and his mother moved to the Wenatchee, Washington area, some distance from the Colville Indian Reservation. She subsequently married Steven John Hodgson, a non-Indian, and the Petitioner and his mother thereafter lived in the residence of the Hodgsons for the rest of the Petitioner's minority years. When the Pe-

titioner was four years of age, with the consent of the biological father, Steven John Hodgson adopted the Petitioner (Ex. 1) in Wenatchee, Washington. In accordance with Washington law a new birth certificate (Ex. 3) was issued for Duane Garvais showing that the "Color Or Race" of his mother was "White" and that of the father, Steven John Hodgson as "White." The Hodgson family lived in non-Indian communities and had no contact with any Indian community or Tribe.

When the Petitioner reached the age of majority he was either informed or learned of his biological father and apparently made contact with him. The Petitioner apparently learned of his father's Indian blood. The Spokane Tribe, in seeking to prosecute the Petitioner as an "Indian" contends that after meeting his biological father, Garvais thereafter held himself out as an "Indian." When Garvais joined the United States Marine Corp in 1986 the typed portion of those records listed his "Ethnic Group" as "American Indian." However, in the portion of enlistment documents completed in handwriting, the Petitioner listed his name as Duane Henry Hodgson, his father as Steven J. Hodgson and his mother as Mary E. McDonald. It is uncertain when the Petitioner commenced using the surname of Garvais. His discharge from the United States Marine Corp still showed his surname as Hodgson. (Ex. 29).

After his discharge from the Marine Corp in 1990, Garvais worked as a police officer for the Colville Indian Tribe until 1999 when he was appointed as a Criminal Investigator by the United States Bureau of Indian Affairs, where he was serving at the time of the charge filed against him in the Spokane Tribal Court in 2003. At the time of his appointment by the Bureau of Indian Affairs he was given an "Indian Preference." However, following the

charge being filed in Spokane Tribal Court, Garvais requested assistance from the Bureau of Indian Affairs, stating *inter alia* that "I am not an enrolled member of any Federally Recognized Tribe which in itself removes any claims the Spokane Tribe has regarding venue or jurisdiction." This caused the Bureau of Indian Affairs to investigate whether Garvais' appointment by the Bureau of Indian Affairs was erroneous based upon an alleged incorrect determination of Garvais's entitlement to an Indian Preference. The Bureau of Indian Affairs determined that the Preference had been improperly granted making Garvais ineligible for the prior appointment. The Bureau of Indian Affairs removed him from his position in February, 2004 and that determination was upheld by the Merit Systems Protection Board on July 8, 2004. (Ex 25). The basis for this decision was that to be entitled to the Indian Preference as a descendant of a member of a federally recognized Indian tribe, the applicant himself must have been residing on an Indian reservation on June 1, 1934. Being born in 1966, Garvais did not meet the 1934 requirement.

Included in the Bureau of Indian Affairs file (Ex. 29) is a resume apparently prepared by Garvais at the time of his application for employment. That resume states in part that "I am a direct descendant of the Colville Confederated tribes 1/16 blood degree and a resident of Washington. I am pending enrollment with the Assiniboine tribe in the near future with a documented blood degree of 5/8." That statement was erroneous as evidenced by the September 7, 2004 testimony of Elizabeth Horse Capture Azure of the Assiniboine Tribe enrollment office. Ms Azure's testimony established that the enrollment records of that Tribe failed to establish that Mr. Garvais' biological father was a descendant of that Tribe or that Duane Garvais was a descendant of that Tribe or entitled to enrollment therein.

While employed by the Bureau of Indian Affairs, Garvais was assigned to the Spokane Tribe reservation. Of that five year term of employment Garvais lived on the Spokane reservation for a period of approximately 19 months. Apparently the Spokane Tribe gave Garvais and his wife preference for Spokane Tribe housing, although the evidence did not establish that this was by reason of his being an "Indian." Rather, the evidence established that this housing preference was by reason of the nature of Garvais' employment as a police officer with the Bureau of Indian Affairs. While officials of the Spokane Tribe believed Garvais to be an "Indian" it was known that he was not a member of that Tribe and he was not recognized as a member of any other Tribe. Garvais did not participate in that Tribe's stick games, was not entitled to vote in tribal elections, did not receive "per capita" payments, and was not granted tribal hunting or fishing rights. Apparently during this time Garvais was afforded occasional medical treatment at the Colville Tribal Health Service. (Ex. 23). However, that health care is made available to any descendant of a member of that Tribe, regardless of blood, and membership in that Tribe is not required. Exhibit 27 is the Descendant Certification of the Colville Confederated Tribes which shows that Garvais' apparent grandfather, Fred Henry McDonald, had been a member of that Tribe with a "Colville Indian Blood Possessed" of 1/4th. Duane Garvais' "Colville Indian Blood Possessed" was listed as 1/16th. To be a member of that Tribe the person must have at least 1/4th Colville blood.

On August 9, 2004, the Spokane Tribe introduced the testimony of Dion Fry, who was married to Garvais in 1996. Apparently she and Garvais were divorced, fol-

lowed by a remarriage and another divorce in a state of Washington court. Ms. Fry is an enrolled member of the Colville Confederated Tribes. Ms. Fry testified that Garvais told her that he was a descendant of a Colville tribal member and that he had family members who were members of the Assiniboine Tribes. Ms. Fry testified that Garvais participated in some Indian activities such as the use of a "sweathouse" for spiritual reasons, that he had possession of a sacred Indian feather in his truck, and that he had participated in Indian basketball games and Indian "pow-wows."

None of the witnesses offered by the Spokane Tribe established that Garvais had ever held himself out as a member of any federally recognized Indian Tribe and all persons having records of Garvais knew that he had no Spokane blood and only 1/16 Colville blood, much less than the 1/4 blood required to be a member of either Tribe. The testimony of those witnesses, at best, established that Garvais had held himself out as a descendant of a Colville tribal member (his grandfather). He further stated to his then wife that he believed he was descended from the Assiniboine Tribe, although that belief was incorrect as established by the testimony of the enrollment officer of that Tribe. At no time did Garvais represent to anyone that he was a member of any Tribe, Colville, Assiniboine, or any other federally recognized Tribe. The strongest evidence offered by the Spokane Tribe was from Garvais's resume attached to his B.I.A. application and even that did not represent that he was a member of any federally recognized Indian tribe.

Section 2–1.12 of the Spokane Tribal Code defines an Indian as follows: "An 'Indian' as used in this Code shall be deemed to be any person of Indian descent who is a member of a recognized Indian Tribe under Federal jurisdiction." The

court has previously ruled that this provision of the Spokane Tribal Code does not, in and of itself, preclude the prosecution by that Tribe of an Indian who is not a member of a federally recognized Indian tribe, although it does show the importance the Spokane Tribe places on membership in a federally recognized Tribe.

From the foregoing, the court finds:

1. The Petitioner Duane Garvais is not now and never has been a member of any federally recognized Indian Tribe.

2. The maximum Indian blood possessed by Duane Garvais in any federally recognized Indian Tribe is 1/16th Kootenai and 1/16th Colville.

3. All relevant Indian Tribes require a direct blood line of at least 1/4th to be eligible for enrollment in that Tribe.

4. Duane Garvais at no time held himself out as being a member of any federally recognized Indian Tribe.

5. Duane Garvais was not recognized by the Spokane, Colville, or any other Tribe as a member of a federally recognized Indian Tribe.

6. Duane Garvais held himself out to be a descendant of an enrolled member of the Colville Confederated Tribes and from that heritage, represented in his application for employment with the Bureau of Indian Affairs that he should be granted a preference as an Indian.

### ANALYSIS

In 1990 the United States Supreme Court, in *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693, ruled that tribal courts did not possess criminal jurisdiction over Indians who were not members of that Tribe. The United States Congress promptly passed 25 U.S.C. § 1301(2) which recognized and affirmed the "inherent power of Indian tribes ... to exercise criminal jurisdiction

over all Indians," without regard to membership in the charging tribe. In June, 2001, in a unanimous *en banc* opinion, the Ninth Circuit Court of Appeals upheld the constitutionality of that statute, reserving a possible equal protection argument that was not presented to it. *United States v. Enas*, 255 F.3d 662; *cert. denied*, 534 U.S. 1115, 122 S.Ct. 925, 151 L.Ed.2d 888 (2002). This year, the United States Supreme Court also found § 1301(2) to be constitutional, rejecting a double jeopardy challenge in *United States v. Lara*, 541 U.S. 193, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). The Court, as had the Ninth Circuit in *Enas*, reserved ruling on any possible due process or equal protection challenge to § 1301(2) as not having been presented. The Petitioner herein, Mr. Garvais, has put forth the equal protection argument, however, because of this court's finding that Mr. Garvais is not subject to the jurisdiction of the Spokane Tribal Court, the court has not addressed that challenge.

25 United States Code § 1301(4) sets forth the definition of who are Indians that are subject to the jurisdiction of Tribal Courts as follows:

"Indian" means any person who would be subject to the jurisdiction of the United States as an Indian under section 1153, Title 18, if that person were to commit an offense listed in that section in Indian country to which that section applies.

18 United States Code § 1153, commonly referred to as the Major Crimes Act, provides for federal jurisdiction over 14 enumerated crimes committed by "Indians" within "the Indian country". Section 1153 contains no definition of "Indian," and the determination of whether a person is an "Indian" has been left to the courts. The court decisions setting forth considerations in defining "Indian" for jurisdiction-

al as opposed to racial classification are therefore instructive. The most modern text on Indian law is William C. Canby's *American Indian Law* (4th Ed.2004). At pages 8–10 of his treatise, Judge Canby discusses **"Who Is An Indian?"** He states in part that besides the basic requirement of the individual having some Indian blood that:

For many federal jurisdictional and statutory purposes it is not enough that the individual be regarded as an Indian by his or her community; the person must be considered a member of a *federally recognized* tribe. *LaPier v. McCormick*, 986 F.2d 303, 305 (9th Cir.1993); *State v. Sebastian*, 243 Conn. 115, 701 A.2d 13(1997); *United States v. Antoine*, 318 F.3d 919 (9th Cir.2003).

As to the necessity of a person being a member of a federally recognized Indian Tribe, Judge Canby, @ 10, states:

It is not always necessary for an individual to be formally enrolled in a recognized tribe to be regarded as a member for jurisdictional purposes. *United States v. Broncheau*, 597 F.2d 1260 (9th Cir.1979); *United States v. Keys*, 103 F.3d 758, 761 (9th Cir.1996); but see *United States v. Lawrence*, 51 F.3d 150 (8th Cir.1995). Nevertheless, enrollment is commonly a prerequisite for acceptance as a member of the tribal community, and it provides by far the best evidence of Indian status.

As Judge Canby points out, *supra*, certain court decisions, have held, arguably, that whether a person is a member, in fact, of a federally recognized Indian Tribe, is determinative in concluding whether that person is legally an Indian for § 1153 jurisdictional purposes. In *LaPier v. McCormick*, 986 F.2d 303 (9th Cir.1993), the court rejected the contention of a state convicted person that he was only subject to federal court jurisdiction under § 1153

because he was an Indian. The Ninth Circuit, at 304–05, summarily dismissed this claim including evidence of the Defendant's significant Indian blood and other connections to a Tribe, holding that those matters are not of concern when the "threshold" question of membership in a federally acknowledged Indian Tribe is answered in the negative. The court stated: "If the answer is no, the inquiry ends. A defendant whose only claim of membership or affiliation is with an Indian group that is not a federally acknowledged Indian Tribe cannot be Indian for criminal jurisdiction purposes." *Id.* at 306, citing *United States v. Heath,* 509 F.2d 16,19 (9th Cir.1974). See also *United States v. Lawrence,* 51 F.3d 150 (8th Cir.1995).

▮ In this case, it is not disputed that Mr. Garvais does in fact have Indian blood, although that quantum is limited. His maximum Indian blood in any federally recognized Indian Tribe is 1/16th. Cumulating the Indian blood of his biological father and mother, Garvais' total Indian blood from all tribes would appear to be 6/32nds. However, the fact that a person has Indian blood alone does not create federal court jurisdiction over such a person under 18 U.S.C. § 1153 or tribal court jurisdiction which depends on § 1153. *See United States v. Antelope,* 430 U.S. 641, 646, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977); *United States v. Broncheau,* 597 F.2d 1260, 1263 (9th Cir.1979); *St. Cloud v. United States,* 702 F.Supp. 1456, 1461 (D.S.D.1988). To so hold would violate the long established rulings of the United States Supreme Court that Congress, legislating pursuant to its plenary power over Indians pursuant to the Indian Commerce Clause of the United States Constitution, Article I, § 8, cl. 3, does not violate the Equal Protection Clause. Such legislation describes a political group or membership, not a racial group. *See Antelope, supra,*

at 646, 97 S.Ct. 1395 and *United States v. Keys,* 103 F.3d 758, 761 (9th Cir.1996). These decisions emphasize that membership, as opposed to race, is the critical matter of inquiry in matters such as that *sub judice.*

Garvais is not a member of or eligible for enrollment in any such Tribe. While enrollment in a federally recognized Tribe has never been determinatively adjudicated to be an absolute requirement of § 1153 or tribal court jurisdiction, "enrollment is the common evidentiary means of establishing Indian status." *Broncheau, supra,* at 1263. The importance of enrollment is evidenced by the fact that courts have found tribal enrollment alone sufficient proof that a person is an Indian. *St. Cloud, supra,* at 1461.

▮ The limited quantum of Indian blood possessed by Garvais and the fact that he is not an enrolled member of any Tribe, nor eligible therefore, weigh heavily against a finding that Garvais is an Indian subject to prosecution in the Spokane Tribal Court. The Spokane Tribe contends that despite these missing facts, Garvais may still be determined to be an Indian pursuant to § 1153, based upon his alleged recognition as an Indian by other Indians and Tribes, his social assimilation with other Indians and Tribes, and his receipt of benefits as an Indian. Garvais' assimilation and association with the Spokane Tribe was primarily due to his employment as a police officer with the Bureau of Indian Affairs. Until his 19 month residence on the Spokane Reservation while so employed, Garvais had never lived on a tribal reservation, except possibly for a very brief period as an infant prior to his mother moving to Wenatchee, Washington. He lived as a non-Indian until his employment as a police officer with the B.I.A. and as stated, *supra,* his Indian preference by the B.I.A. was found to be invalid. While

Garvais did receive some limited health benefits from the Colville Tribe those benefits were afforded him as a "descendant" of a former member of that Tribe, not because he was an Indian. His period of residence in Indian housing was by reason of his employment with the B.I.A, not because of his allegedly being an Indian. His other limited Indian activities for relatively brief periods of his life do not warrant a conclusion that he is in fact an Indian under § 1153, particularly in view of his limited blood quantum and his lack of enrollment, or eligibility for enrollment in any Indian Tribe.

Following the conclusion of the evidentiary phase of this matter, the court asked counsel to address the issue of whether any recognition by others of Garvais as an Indian must have included recognition of his being a member of any specific Indian Tribe, since there was no evidence at all that Garvais was so recognized by anyone. As stated, *supra*, the Spokane Tribal Code does define an Indian as being a "person of Indian descent who is a member of a recognized Indian Tribe under Federal jurisdiction." While not determinative in this matter, that provision of the Spokane Tribal Code evidences a recognition of the importance of enrollment or association with a specific Indian Tribe.

Neither party has cited to the court any case in which a person such as Garvais has been determined to be legally an Indian for § 1153 jurisdictional purposes and the court's research has not discovered any such case. In *St. Cloud*, 702 F.Supp. 1456, the court determined that the Defendant was not subject to federal jurisdiction under § 1153, since the Tribe in which he had previously been enrolled had been terminated from federal recognition. This conclusion of the court existed even though St. Cloud had lived as an Indian, had parents with full Indian blood who were tribal members, and St. Cloud lived and

received benefits as an Indian throughout his life.

Garvais' connections to Indian life were for a limited duration. He was never regarded by members of either the Spokane or Colville Tribes as being an enrolled member of any Tribe. He was only regarded as one who had Indian blood by reason of being a descendant of an Indian. That recognition is insufficient to classify Garvais as legally an Indian subject to § 1153 or the jurisdiction of a Tribal Court. By reason of the foregoing, it is the conclusion of this court that Garvais is not subject to the jurisdiction of the Spokane Tribal Court and his Petition For Writ of Habeas Corpus prohibiting that court from prosecuting him must be Granted.

**IT IS SO ORDERED.**

The Clerk of this court shall enter this Order, enter judgment granting the Petition For Writ of Habeas Corpus prohibiting the Spokane Tribal Court from prosecuting Duane Garvais and directing that the Spokane Tribal Court dismiss the pending charges against and any restraints on Duane Garvais flowing therefrom. The Clerk shall forward copies to counsel.