OSCN Found Document:BERTRAND v. STATE

 

 
 BERTRAND v. STATE
2025 OK CR 19
Case Number: F-2024-38
Decided: 10/16/2025
Mandate Issued: 10/16/2025
THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2025 OK CR 19, __ P.3d __

 

CODY LEAON BERTRAND, Appellant,
v.
THE STATE OF OKLAHOMA, Appellee.

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant Cody Leaon Bertrand appeals his Judgment and Sentence from the District Court of Rogers County, Case No. CF-2020-158, for two counts of Lewd or Indecent Acts to a Child Under 12, in violation of 21 O.S.Supp.2017, § 1123

(1) whether the trial court erred by finding he was not an Indian for purposes of criminal jurisdiction;

(2) whether the trial court erred in admitting sexual propensity evidence;

(3) whether the trial court erred in admitting child hearsay statements;

(4) whether the trial court erred in denying Bertrand's request to present a defense witness via videoconferencing;

(5) whether the trial court erred in refusing his requested jury instruction on sex offender registration;

(6) whether the evidence was legally sufficient to convict him of the crimes charged; and

(7) whether he was denied effective assistance of counsel.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.

1.

¶3 Bertrand's first claim turns on whether he is an Indian for purposes of criminal jurisdiction. If he is an Indian, the State lacked jurisdiction to prosecute him under McGirt v. Oklahoma, 591 U.S. 894 (2020) (holding state courts generally lack jurisdiction to prosecute Indians who commit certain crimes in Indian country). The trial court denied Bertrand's motion to dismiss on jurisdictional grounds, finding Bertrand did not meet the definition of "Indian" because he was not a member of a federally recognized Indian tribe. See Parker v. State, 2021 OK CR 17495 P.3d 653

¶4 This case raises a question of first impression, namely whether a defendant must be affiliated with a federally recognized tribe to meet the second prong of the Indian status test for purposes of exclusive federal criminal jurisdiction. The trial court found that Bertrand is, and was at the time of the charged offenses, a member of the Sac River and White River Bands of the Chickamauga Cherokee Nation (Chickamauga). According to the Chickamauga chief who testified at the motion hearing, the Chickamauga, once part of the Cherokee Nation, separated from the Cherokee long ago. Unlike the Cherokee, however, the Chickamauga are not a federally recognized tribe by the Department of Interior, Bureau of Indian Affairs (BIA). 

¶5 In our cases discussing the Indian status test, we did not address whether the defendant's affiliated tribe must be federally recognized because the tribes involved in those cases were federally recognized by the BIA. See Wadkins v. State, 2022 OK CR 2504 P.3d 605Parker, 2021 OK CR 17United States v. Zepeda, 792 F.3d 1103, 1106-07 (9th Cir. 2015), which reaffirmed that the second prong of the Indian status test requires the defendant to be recognized by, or affiliated with, a federally recognized tribe. 

¶6 The Ninth Circuit first addressed whether a defendant's Indian status depended on whether his or her affiliated tribe was federally recognized in LaPier v. McCormick, 986 F.2d 303 (9th Cir. 1993). The court rejected the defendant's habeas corpus petition challenging his state court conviction because the Indian group with which he claimed affiliation was not a federally recognized Indian tribe. LaPier, 986 F.2d at 306. The court observed that it was "the existence of the special relationship between the federal government and the tribe in question that determines whether to subject the individual Indians affiliated with that tribe to exclusive federal jurisdiction for crimes committed in Indian country." Id. at 305. The court deferred to "the political departments" namely the BIA to determine whether the United States recognizes a particular tribe and cited the BIA's list delineating which Indian tribes are acknowledged by the federal government. Id. Absent evidence of its incompleteness, the court found "the BIA list appears to be the best source to identify federally acknowledged Indian tribes whose members or affiliates satisfy the threshold criminal jurisdiction inquiry." Id. In rejecting LaPier's petition, the court concluded that "[w]hile LaPier may be an Indian in an anthropological or ethnohistorical sense, he is not an Indian for purposes of criminal jurisdiction." Id. at 306.

¶7 In Zepeda, 792 F.3d at 1107, the Ninth Circuit rejected the defendant's sufficiency of the evidence challenge to his federal conviction, finding that the trial evidence was sufficient to prove he was an Indian under the Indian Major Crimes Act (IMCA). LaPier's interpretation of the second prong of the Indian status test, requiring membership in, or affiliation with, a federally recognized Indian tribe. Id. at 1110. The court, however, overruled its earlier decision in United States v. Maggi, 598 F.3d 1073 (9th Cir. 2010), holding that the first prong of the Indian status test required the defendant's bloodline be derived from a federally recognized tribe. Id. at 1113. The court explained that the "gloss added by Maggi to the first prong of [the Indian status test] would impose an unnecessary and burdensome requirement." Id. The court held Indian status under the IMCA required the government to prove two elements, namely that (1) the defendant has some quantum of Indian blood; and (2) the defendant is a member of, or affiliated with, a federally recognized tribe. Id. The court also held the government must prove the defendant was an Indian at the time of the charged offense(s). Id.

¶8 The conclusion that a tribe must be federally recognized for a state to lose its authority to prosecute a member for crimes committed in Indian country is not extraordinary. Indeed, the Supreme Court decided long ago that the federal criminal statutes do not violate the Due Process Clause of the Fifth Amendment by subjecting individuals to federal prosecution by virtue of their status as Indians. United States v. Antelope, 430 U.S. 641, 649 (1977). The Supreme Court focused on the relationship between the federal government and the tribes, observing:

that federal regulation of Indian affairs is not based upon impermissible classifications. Rather, such regulation is rooted in the unique status of Indians as "a separate people" with their own political institutions. Federal regulation of Indian tribes, therefore, is governance of once-sovereign political communities; it is not to be viewed as legislation of a "'racial' group consisting of 'Indians' . . . ." Morton v. Mancari, [417 U.S. 535] at 553 n. 24 [(1974)] . . . . Indeed, respondents were not subjected to federal criminal jurisdiction because they are of the Indian race but because they are enrolled members of the Coeur d'Alene Tribe.

Id. at 646. The Court noted that federal jurisdiction under the IMCA does not apply to many persons who are racially classified as Indians. Id. at 646 n.7. The Court further observed that "members of tribes whose official status has been terminated by congressional enactment are no longer subject, by virtue of their status, to federal criminal jurisdiction under the [IMCA]." Id. Without the relationship between the tribe and the federal government, there is no jurisdiction under the IMCA.

¶9 The District of Columbia Circuit Court of Appeals considered the important tribal privileges associated with federal recognition when reversing a district court's finding that the BIA had violated the Administrative Procedure Act by unreasonably delaying processing a tribe's petition for recognition. Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094 (D.C. Cir. 2003). That court noted:

A federally-recognized American Indian tribe is entitled to significant privileges, including exemption from state and local jurisdiction -- including laws regulating gambling -- and the right of its members to participate in an array of welfare programs. Although the Congress has recognized tribes through legislation in recent years, it is ordinarily up to the Secretary of the Interior, through a painstaking bureaucratic process, to determine whether the United States will recognize the sovereignty of a putative tribe. See generally 25 C.F.R. Part 83.

Id. at 1097.

¶10 We, too, have discussed the special relationship between the federal government and Indian tribes. In Parker, we recognized that "the term 'Indian' has a specific meaning within the ambit of federal criminal jurisdiction, one that includes both racial and political components of the Indian community." Parker, 2021 OK CR 17Id. 2021 OK CR 17St. Cloud v. United States, 702 F.Supp. 1456, 1461 (D. S.D. 1988)). We repeated these same principles in Wadkins, 2022 OK CR 2LaPier and these other cases that it is the relationship between an Indian tribe and the federal government that determines whether tribal members affiliated with a certain tribe are subject to exclusive federal jurisdiction for crimes committed in Indian country rather than any anthropological factor.

¶11 That the second prong of our Indian status test requires that the defendant be affiliated with a federally recognized tribe may be inferred from our cases as well. In both Parker and Wadkins, we used the term "federally recognized tribe" freely and without pause. For example, we noted in Parker that the district court held that Parker failed to show "he was recognized by a federally recognized Indian tribe" while also noting the State's argument that a defendant must be enrolled in a "federally recognized tribe at the time of the offense." Parker, 2021 OK CR 17federally recognized tribe or the federal government." Id. 2021 OK CR 17Wadkins, 2022 OK CR 2federally recognized tribe. Id. 2022 OK CR 2

¶12 Based on the foregoing, we clarify that our Indian status test requires the defendant to show that (1) he or she has some quantum of Indian blood; and (2) he or she is a member of, or affiliated with, a federally recognized tribe. We agree the evidence showed that Bertrand has Indian blood and that he was an enrolled member of the Chickamauga Tribe when the charged offenses occurred. Nevertheless, because his tribe is not on the BIA list of federally recognized tribes, we find the trial court did not err in finding Bertrand failed to satisfy the requirements of the second prong of the Indian status test. Hence, Bertrand is not an Indian for purposes of criminal jurisdiction and the State had jurisdiction to prosecute this case. This claim is denied.

2.

¶13 Bertrand claims he was denied a fair trial by the trial court's admission of "extensive propensity testimony" which misdirected the jury's focus and resulted in an improper jury verdict and miscarriage of justice. The trial court permitted Bertrand's three adult nieces to testify, over objection, that Bertrand molested them when he was a juvenile and they were between the ages of seven and ten years old. Because he objected to the challenged evidence below, we review the trial court's rulings admitting the evidence for an abuse of discretion. See Posey v. State, 2024 OK CR 10548 P.3d 1245cert. denied, 145 S. Ct. 1142 (2025). This Court will find an abuse of discretion "only where the ruling is unreasonable or arbitrary and made without proper consideration of the facts and law pertaining to the matter at issue." Id.

¶14 Bertrand contends that the alleged prior incidents with his nieces: (1) were too far removed in both time and character from the charged offenses in this case to be probative; (2) were not clearly proven as no charges were ever filed despite the allegations being formally reported and investigated; and (3) were more prejudicial than other evidence available to the State. In Posey, we discussed the admission of sexual propensity evidence, stating:

Evidence is relevant when it has "any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Postelle v. State, 2011 OK CR 30267 P.3d 114Id. "When measuring the relevancy of evidence against its prejudicial effect, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Bever v. State, 2020 OK CR 13467 P.3d 693Mayes v. State, 1994 OK CR 44887 P.2d 1288Postelle, 2011 OK CR 30

Posey, 2024 OK CR 10

¶15 The Honorable Stephen R. Pazzo, District Judge, conducted the pre-trial hearing concerning the admission of the proposed sexual propensity evidence, but did not preside over Bertrand's jury trial. Judge Pazzo heard from the three propensity witnesses and found that the proffered propensity evidence was relevant, that the propensity witnesses were credible, that the propensity evidence was sufficiently proven, and that it was more probative than prejudicial. The trial court revisited Judge Pazzo's ruling before the presentation of the propensity witnesses and found the hearing and his ruling comported with the relevant statutes and case law, including Horn v. State, 2009 OK CR 7204 P.3d 777. The trial court again found the evidence was admissible and gave the required limiting instruction both before the testimony of the propensity witnesses and in its final closing instructions. In ruling, the trial court rejected these same arguments Bertrand now makes, and its ruling is supported by the record. Accordingly, we find the trial court did not abuse its discretion in admitting the propensity evidence. This claim is denied.

3.

¶16 Bertrand claims the trial court erred by allowing the State to bolster L.F.'s and A.F's trial testimony with L.F.'s hearsay statements to her mother, the children's statements to the forensic interviewer, the presentation of the children's second videotaped forensic interviews, and L.F.'s statements to her trauma counselor. Because Bertrand failed to renew his pretrial objection to the evidence during trial, our review is for plain error only. See Kurtanic v. State, 2023 OK CR 13534 P.3d 1055

¶17 Bertrand does not contest the admissibility of the challenged hearsay statements under the child hearsay exception in

12 O.S.2021, § 2803.1

¶18 Testimony from the children's mother, the forensic interviewer, and trauma counselor involved different pieces in the disclosure process and investigation of the abuse. While there was some overlap in the testimony of the various witnesses, their testimony and the forensic interviews were not needlessly repetitious and not so cumulative as to be unfairly prejudicial. The young age of L.F. and A.F. at the time of the alleged abuse made the disclosure process particularly relevant to assess their testimony and credibility as well as Bertrand's defense. The probative value of the testimony and forensic interviews was not substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. Posey, 2024 OK CR 10See Norman v. State, 2023 OK CR 4528 P.3d 1142 In rejecting this claim, we observe the trial court properly instructed the jury on assessing (1) the weight and credibility of each individual witness; (2) Bertrand's character evidence; (3) the inconsistent statements of L.F.; (4) the credibility of the defendant; and (5) the credibility of expert witnesses. These instructions well guided the jury in its evaluation of the trial evidence. Based on this record, we find no error in the admission of the child hearsay evidence. This claim is denied.

4.

¶19 Bertrand claims the trial court committed reversible error by refusing to allow Alisha Mugele to testify via videoconferencing under 20 O.S.2021, § 130Rules for District Courts of Oklahoma, Title 12, Ch. 2, App. (2024). See Vasquez v. State, 2025 OK CR 1564 P.3d 880 Rule 34(C), Rules for District Courts of Oklahoma, Title 12, Ch. 2, App. (2024).

¶20 The trial court considered on the record each of the factors outlined in Rule 34(C)(1)-(12). Of concern to the court was defense counsel's lack of evidence concerning any effort to secure Mugele's presence in person despite knowing about the propensity witnesses for years as well as the immense value to the jury and attorneys of seeing and hearing the witness in a courtroom setting. Of even more concern to the court, however, was its ability to control the proceedings at the remote location. 

¶21 We cannot find on this record that the ruling was clearly wrong or denied Bertrand the right to present a defense. Bertrand has not shown "(1) that the court prevented him from obtaining or presenting evidence; (2) that the court's action was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose; and (3) that the excluded evidence 'would have been relevant and material, and . . . vital to the defense.'" Harris v. State, 2019 OK CR 22450 P.3d 933Washington v. Texas, 388 U.S. 14, 16 (1967)). Given the broad discretion trial courts enjoy concerning the presentation of witness testimony via videoconferencing, we find that the trial court's videoconferencing decision was neither unreasonable nor an abuse of discretion. This claim is denied.

5.

¶22 Bertrand argues the trial court erred by refusing his request to instruct his jury that, if convicted, he would be required to register as a sex offender. We review the trial court's ruling for an abuse of discretion and find the trial court's ruling was correct and consistent with settled law. See Reed v. State, 2016 OK CR 10373 P.3d 118Barnes v. State, 2017 OK CR 26408 P.3d 209Reed); Duclos v. State, 2017 OK CR 8400 P.3d 781Reed holding and finding no error in failing to submit instruction on sex offender registration even where jury asks during deliberations about registration). This claim is denied.

6.

¶23 Bertrand argues his two convictions for lewd acts with a child under 12 must be reversed and dismissed for insufficient evidence. He does not claim that the State failed to prove any specific element of these offenses, only that the victims' testimony of abuse lacked meaningful detail. Without corroboration of their testimony, he maintains no rational jury could have found he inappropriately touched L.F. and A.F. beyond a reasonable doubt.

¶24 The record shows Bertrand's jury was properly instructed on the elements of lewd or indecent acts with a child under 12 which served as the basis of his charges. L.F.'s and A.F.'s testimony amply supported the alleged offenses, including that Bertrand touched L.F.'s mouth with his penis and forced A.F. to touch L.F. with his penis. The abuse occurred when the children were visiting Bertrand at his mother's house, and both children were able to identify a photograph of the closet where the abuse took place. That their statements varied during the disclosure process was not surprising given their very young ages. See Gordon v. State, 2019 OK CR 24451 P.3d 573See Mason v. State, 2018 OK CR 37433 P.3d 1264 Spuehler v. State, 1985 OK CR 132709 P.2d 202

7.

¶25 Bertrand claims defense counsel was ineffective for failing to renew defense objections to the child hearsay evidence at trial. We reject this claim because Bertrand cannot show the necessary prejudice to prevail as we have already found, in Proposition 3, supra., no error in the admission of the child hearsay evidence. See Strickland v. Washington, 466 U.S. 668, 687 (1984). See also Jackson v. State, 2016 OK CR 5371 P.3d 1120Malone v. State, 2013 OK CR 1293 P.3d 198

DECISION

¶26 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2025), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY
THE HONORABLE TERRELL S. CROSSON, SPECIAL JUDGE

 
 
 APPEARANCES AT TRIAL
 
 JESSE T. MUTH
 ATTORNEY AT LAW
 HARTLEY LAW FIRM
 177 WEST DELAWARE ST.
 P.O. BOX 553
 VINITA, OK 74301
 
 
 KORBYN J. EASLEY
 ATTORNEY AT LAW
 EASLEY & EASLEY
 400 S. MUSKOGEE AVE.
 CLAREMORE, OK 74017
 COUNSEL FOR DEFENDANT
 APPEARANCES ON APPEAL
 
 JAMIE. D. PYBAS
 APPELLATE DIVISION EAST
 OKLAHOMA INDIGENT
 DEFENSE SYSTEM
 111 N. PETERS AVE., SUITE 100
 NORMAN, OK 73069
 COUNSEL FOR APPELLANT
 
 
 
 
 KALI STRAIN
 ZACHARY T. CABELL
 ASST. DISTRICT ATTORNEYS
 ROGERS CO. DISTRICT
 ATTORNEY'S OFFICE
 200 S. LYNN RIGGS BLVD.,
 2nd FLOOR
 CLAREMORE, OK 74017
 COUNSEL FOR STATE
 
 
 GENTNER F. DRUMMOND
 ATTY. GENERAL OF OKLAHOMA
 MICHEL A. TRAPASSO
 ASSISTANT ATTORNEY GENERAL
 313 N.E. 21st STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 

OPINION BY: ROWLAND, J.
LUMPKIN, P.J.: Concur
MUSSEMAN, V.P.J.: Concur
LEWIS, J.: Concur
HUDSON, J.: Concur
 

FOOTNOTES

21 O.S.Supp.2015, § 13

Here the issue is whether the Defendant's recognition by a non-Federally recognized Tribe is sufficient to meet the second prong of the test. In a 9th Circuit Court of Appeals case the Court found that by virtue of Lapier v. McCormick, 986 F.2d 306 (sic) (9th Cir. 1993) that there must be Federal recognition of the Tribe which the Defendant claims affiliation with. U.S. v. Zepeda, 792 F.3d 1103 (9th Cir. 2001) (sic). This was actually an affirmation of Lapier, and a rejection of a previous case called U.S. v. Maggi, 598 F.3d 1078 (9th Cir.) which had also required the blood quantum of the first prong to be a Federally recognized Tribe. Zepeda overruled Maggi in that regard and clarified that the Federal recognition requirement only applied to the Tribe at issue in the second prong. The Court also found by the Supreme Court's analysis in U.S. v. Antelope, 430 U.S. 641 (1977), "that the definition required at least an affiliation with a Federally recognized tribe."

(O.R. 455).

Zepeda, 792 F.3d at 1110; Parker, 2021 OK CR 17